The next case this morning is 522-0566, People v. Lomax. Arguing for the defendant appellant is Craig Hansen. Arguing for the state appellee is Becky Ray. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Are you ready to proceed? I am ready, your honor. We'll now hear first from the appellant. Please state your name, the record, and you may proceed. Good morning. May it please the court, opposing counsel, I am Craig Hansen from the Office of the State Appellate Defender. On behalf of the appellant, Mr. James Lomax. This case is back in this court after remand with direction that the trial court make a factual determination concerning defense counsel's claim of a per se conflict of interest. A second issue concerns whether the trial court substantially complied with Rule 402. I would like to spend the majority of my allotted time on the former issue, but I am prepared to answer the court's questions concerning the latter. This court remanded this case to the trial court for a factual determination as to whether defense counsel was operating under a per se conflict of interest during Lomax's plea hearing. This court, citing People v. Hernandez, further instructed that should the trial court make such a determination, Mr. Lomax is entitled to automatic reversal and he must be allowed to withdraw his guilty plea. On remand, the trial court held an evidentiary hearing. The trial court, finding that the testimony of plea counsel and defendant was credible, then held that plea counsel, quote, did in fact have a per se conflict of interest concerning his representation of the defendant and another of his defendant clients, end quote. However, despite finding that plea counsel was burdened by a per se conflict and with disregard for this court's direction concerning such a finding, the trial court denied Mr. Lomax's motion to withdraw his guilty plea. Counsel, how could there be a burden if the attorney didn't even know the conflict existed? Well, the conflict stems from the interests of the clients which are imparted to the attorney. Here, it was very clear that Mr. Smith, who was Mr. Lomax's cellmate, had an interest in divulging information to law enforcement that was damaging to Mr. Lomax. In the course of conversations, in accordance with the per se rule, we believe that counsel provides advice to their clients which, even unknown to the counsel, may be damaging to the interests of a second client. So, that is the policy nature behind the per se conflict rule and I'll address that in further detail further in my argument. Does that satisfy your question, your honor? Well, what about the state's argument that the trial court's finding of a per se conflict was not correct? Well, I believe the state's argument there essentially turns on, again, the knowledge requirement. The court here a per se conflict did, in fact, exist and then went on to describe an implied knowledge requirement for both Hernandez and this court's ruling, which we believe is incorrect. At the end of the day, when you look at the interests of Mr. Smith and the interests of Mr. Lomax, there arises the conflict and that conflict is imparted to the attorney. The per se conflict will exist because of the attorney's status in representing the two and the assumption that the attorney provides advice to clients that may be detrimental, provides advice to one client that may be detrimental to the interests of the other client, even if that attorney is not aware that the clients have diverging interests. In its written order, the trial court held that Hernandez and, by extension, this court's direction on remand contained an implied knowledge requirement that defense counsel demonstrate actual awareness of the per se conflict. The trial court went on to declare that without this knowledge, counsel's performance could not have been adversely impacted by the per se conflict, and here the trial court applied the wrong standard and the wrong analysis to the facts of this case. Our law distinguishes between two types of conflict of interest, per se and actual. Each type of conflict is afforded a different treatment. To be clear, Mr. Lomax has never contended that defense counsel operated under an actual conflict of interest, which leaves us with per se, and per se conflicts arise from three different situations, only two of which are germane to this particular case, as there's no allegation that attorney Butler, the defense counsel, was ever personally involved in Mr. Lomax's prosecution. That leaves us in situations where defense counsel has a contemporaneous association with a victim, the prosecution, or an entity assisting the prosecution, or where defense counsel contemporaneously represents a prosecution witness. In this case, there's no doubt that while defense counsel represented Mr. Lomax, he also represented Mr. Lomax's cellmate, Dustin Smith, who harbored a desire to provide law enforcement with information on Mr. Lomax in an attempt to get a better sentence. Unlike an actual conflict of interest, Illinois law does not require a defendant to suffer any prejudice as a result of this conflict. The basis for this holding that our Supreme Court has articulated is the belief that the mere existence of a conflict is sufficient to constitute a violation of rights, whether or not it influences an attorney or the outcome of the case. In defining what has become known as the per se rule, our Supreme Court emphasized that per se conflict exists when specific facts about the attorney's status, and again that status is a result of the conflicting interest between the clients, when the facts about that attorney's status create a disabling conflict. The rationale for this distinction from actual conflicts of interest is rooted in a policy that disfavors representation of the accused, especially when counsel is appointed by an attorney with a possible conflict of interest. In creating the per se rule, the court expressed a concern about the fairness to the accused, the subliminal effect on counsel, and a desire to avoid subjecting counsel to later allegations of disloyalty. Now, the Supreme Court could have predicated a per se conflict rule on an attorney's knowledge of the conflict. However, it did not. Rather, it defined per se conflicts on counsel's status and declined to oppose a knowledge requirement, implied or otherwise. The attorney's status here is a function of the divergent interests of the clients, but for those competing interests which come into conflict where two clients are represented by the same attorney, the per se conflict establishes a bright line, a line that this court, not this court, the trial court crossed after finding that Mr. Lomax's counsel did in fact have a per se conflict of interest, then held that counsel's lack of knowledge could not have resulted in an adverse impact. There is not an adverse impact test when it comes to per se conflict of interests. If I may indulge in a couple of hypotheticals to sort of illustrate this point, the conversation between counsel and one client that concerns an interest that is antagonistic to the interest of a second represented client, we expect counsel to provide guidance to the first client, and the counsel may provide information or advisement to one client that is adverse to the interest of another client, even without counsel's knowing that they are doing so. Where counsel represents two clients, one client is charged with a murder, and it's later determined that the second client actually committed the murder. Clearly those are cases where counsel's knowledge is not suspected, but the nature of the conflict between the two clients is imparted to counsel. I would like to just conclude by saying a finding by this court that the trial court was correct in its per se conflict analysis would necessarily endorse a knowledge component for the per se conflict rule, which is something our Supreme Court has declined to adopt. Indeed, it's the very insidious nature of the per se conflict and its subtle and subliminal effect on counsel that prompted the creation of the rule in the first place. Accordingly, Mr. Lomax asks that this court reverse the trial court's denial of his motion to withdraw his guilty plea and remand for further proceedings with the appointment of conflict-free counsel. Thank you. Thank you, counsel. We'll now hear from the state. Ms. Ray, please state your name for the record. Good morning. I'm Becky Ray, and I am representing the people. I would first like to address the alleged per se conflict. Counsel is correct that there are three situations where a per se conflict may exist, but in this case, I disagree with counsel who says that two of those apply. I think only one of those applies in this case, and it's only remotely. That is where defense counsel contemporaneously represents a prosecution witness. That is the only one that remotely applies in this case, and I don't think it applies because I respectfully think that the trial court was incorrect in its finding that a per se conflict existed. People v. Morales is instructive in this situation. That citation is 209 Illinois 2nd 340. It's a 2004 case. In that case, Hernandez, who was essentially the defendant's boss in a drug ring, was a potential witness for the state in the defendant's murder case, and Smith, in this case, stands in a similar position as Hernandez did in that he was never more than a potential witness, if even that in this case. In this case, the state had not yet tendered discovery to the defense, and so Dustin Smith was never listed as a witness, and he was also not called as a witness at the defendant's sentencing hearing, and according to the factual basis that the state gave at the defendant's plea hearing, it was not contemplated that Smith would be a witness. The factual basis indicated that a police officer would be the one who would testify at trial as to the elements for and lawful use of weapon by a felon, which is this defendant pled guilty to. Additionally, a police officer was called at the sentencing hearing for the state, and he was the only witness called for the state. So, Dustin Smith was never a witness in this case, or even a potential witness, and as the trial court discerned at the remand hearing, Butler, Phillip Butler, defendant's plea counsel, indicated that he was not aware that a conflict even possibly existed until after the defendant had already pled guilty and Dustin Smith's case was called, and that just prior to Dustin Smith's case being called, Butler had spoken with him, and that's when he ascertained that there might be a possible conflict, but Dustin Smith never rose to the level of a potential witness, and if you follow people via Morales, this is a similar situation where no per se conflict existed, and respectfully, the trial court should have followed the appellate court's instructions on remand. Absolutely, I don't condone that it didn't. However, the trial court simply got it wrong in finding that there was a per se conflict, and for that reason, I think the ruling that the trial court gave was correct, and this court can look to any reason in the record to support that, to affirm that ruling, and I think that that's what this court should do, because when you look at the facts, if you look at just the prosecution witness, because Dustin Smith never became a prosecution witness, he didn't even, to Butler's knowledge, even at the remand hearing, and Butler's testimony was unrebutted on this point, Dustin Smith never proffered to the police anything about the defendant, and so there was is that the prosecution witness has to have been able to benefit from whatever information he had that he was going to proffer against the defendant, and that never happened in this case, to Butler's knowledge, and so basically, as the state indicated in the trial court below, this conflict never came to fruition, and so since there was no disabling conflict, there was no per se conflict. Now, in counsel's reply brief, he indicated that the state's argument was akin to Strickland, where we indicated that defendant had to prove prejudice, that's not the case. In a per se conflict, the defendant does not have to presume prejudice, it is presumed, excuse me, does not have to prove prejudice, it's presumed, but there was no per se conflict in this case. Dustin Smith did not become a prosecution witness, not even a potential prosecution witness, because he didn't proffer the information against the defendant, and so Morales didn't, or excuse me, Butler didn't have a conflict, actual or per se, according to Morales, and so we asked the court, in this case, to affirm the trial court's ultimate judgment that the defendant was not permitted to withdraw his guilty plea, despite the fact that the trial court ruled incorrectly about a per se conflict. There's enough in this case now that that issue has been developed in the trial court that this court can determine that no per se conflict existed, and affirm the trial court's not permitted to withdraw his guilty plea. As to the 402 admonitions, I would like to address that briefly. Substantial compliance is all that is required, it doesn't have to be literal compliance, and the defendant's sentence in this case was five years to the Department of Corrections, with a one-year mandatory supervised release period, which is six years total, and that is the term that the state agreed to recommend as its cap there, so the sentence that he actually received is no more onerous than the cap that the state agreed to. Additionally, the 10-year maximum that the defendant could have received is still four years away from what he actually received, so clearly he did not get a more onerous sentence than he was expected or anticipated that he could receive. And as far as the specific admonishments, he was admonished that he had a right to a jury trial, so he knew the alternative for that if he didn't plead guilty was to go to trial. He was also specifically advised that he had the right to remain silent and confront the witnesses against him, and that the state had to prove him guilty beyond a reasonable doubt, and he understood, he indicated to the court that he understood he would be giving up those rights by pleading guilty. And regarding whether or not he understood the nature of the charges, I think the record is pretty clear that he did, and for him to assert otherwise is simply unreasonable. The defendant was advised of the nature of the charges at his first court appearance. He heard the evidence provided at the preliminary hearing by the witness. At his bond reduction hearing, the prosecutor gave a detailed proffer, and in response to that detailed proffer, the defendant himself said, that sure sounds like a trial argument. For him to recognize that the prosecution's proffer was a potential trial argument indicates very clearly that he understood the nature of the charges against him. And even after hearing the state's facts, the factual basis at the plea hearing, he indicated that he still wanted to plead guilty, and he signed a written guilty plea. And the court found that that was knowing and voluntary, according to his entry in the record sheet. Counselor, do you agree that he was never specifically admonished that he had a right to plead not guilty and persist in that plea of not guilty? Correct. I agree. He was not specifically told that he had a right to plead not guilty. However, there are cases, and I'm sorry I didn't write down the name of this, Your Honor, but I did cite it in my brief. Even in situations where he was not specifically told that he had a right to plead not guilty, the court looked at whether or not he was told he had a right to a jury trial and to remain silent and confront the witnesses against him and to hold the state to its burden of proof. And if those things were present, then the fact that he was not specifically told that he had a right to plead not guilty was not detrimental to the 402 admonishments and that they were sufficient in that case. And I believe that is the situation that we have before us. The admonishments, again, were not literal, but they were substantial. And I think in this case, there was no real justice denied. The defendant clearly knew what he was doing and pleading guilty, and he chose to do that even after the substantial admonishments that the trial court gave him. Is the argument then that the specific admonishment about you have a right to plead not guilty and persist in that plea is the least significant of the 402 admonishments? No, no, your honor. That's not the state's argument. But I just think you have to look at the totality of those admonishments. And when you do that, you also have to look whether or not real justice was denied. That's a standard. And in this case, I think when you look at the totality of the admonishments that he was given and his knowledge that he had a right to a jury trial as an alternative to pleading guilty told him basically that he had an alternative besides entering into this guilty plea. And despite that, despite that knowledge, he still chose to enter into the guilty plea. And because he had knowledge of the charges, knowledge of alternatives, and knowledge of the things that he was giving up by pleading guilty, I believe that the admonishments in this case were sufficient to give him knowledge of what he was doing and that he should not be allowed to withdraw his guilty plea because the admonishments were substantial. Thank you. Thank you, counsel. Any other question, Mr. Justice McKean? Nothing further. Justice Barberis? No. Rebuttal. Thank you, Your Honor. The state, I'd first like to address the state's reliance on Morales with respect to the per se conflict issue. And I'd like to put out there that Morales is distinguishable from the instant case. And I'd like to go over a few facts that distinguish Morales from the instant case. The state argues that the trial court's finding of a per se conflict of interest was incorrect as a matter of law. It cites Morales as justification for this conclusion. However, Morales is distinguishable in many respects and should not guide this court's decision in this particular case. To begin with, the defendant Morales was advised of his counsel's potential conflict and waived it in open court. Mr. Lomax conversely had no such knowledge that his counsel was suffering from a per se conflict of interest and was never afforded the opportunity to make such a decision or waiver with respect to that conflict. Next, the Morales court noted that record contained, quote, no basis, unquote, for concluding that the contemporaneously represented potential prosecution witness had anything to gain from the defendant's conviction. And that the evidence regarding the interests of the potential prosecution witness was, quote, speculative at best. This court doesn't have to speculate as to Dustin Smith's interests or Mr. Lomax's interests. Dustin Smith wanted a better sentence and he expressed a desire to provide information on Mr. Lomax to law enforcement in order to get it. Where the defendant Morales knew of his counsel's potential conflict, waived it, and where the divergent interests in Morales between the defendant and the potential witness were left to speculation, Morales does not serve as a good model for this court to follow in deciding Mr. Lomax's case. And therefore we would encourage the court to look at the factual differences between Morales and note that the facts simply don't line up between these two cases and therefore it doesn't serve as a good  The court has a large part of its argument on essentially the holding that an admonishment that a defendant who is contemplating a guilty plea is entitled to a jury trial somehow covers a number of the other enumerated 402 admonishments. It's sort of a, that becomes a catch-all and I realize that the case law here is fairly clear. But when you look at the totality of the circumstances insofar as, you know, the court failed to admonish him of Mr. Lomax of his right to plead not guilty, persist in that guilty or to plead guilty, inform him of the statutory term of one year of MSR and failed to inquire as to whether he understood the nature of the charge and the minimum and maximum sentences he faced, you know, individually, you're right, none of those perhaps rise to the level of not substantially complying, but collectively we have to really look at what the intent of the rule is to ensure that a defendant is making a knowing involuntary plea and entering into that agreement completely knowingly involuntary and whether substantial compliance really occurred in this case. I have no further rebuttal here unless the justices wish to ask more questions. Justice McCain? No, nothing further. Justice Barberis? No, thank you. We would just like to conclude with the prayer for relief and ask that this court reverse the judgment of the trial court and remand for the proceedings with conflict for counsel. Thank you, your honors. Thank you, counsel. The court will take the matter under advisement, issue its decision in due course.